

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> PATRICIA M SANTOYO; aka SANTOYO; § <br> aka SANTOYO-ROCHA, *et al* § <br>     Debtor(s) § <br> § <br> § <br> **RONALD J SOMMERS** § <br>     Plaintiff(s) § <br> § <br> VS. § <br> § <br> **GERARDO A. AGUIRRE; dba** § <br> **CRESTFIELD HOMES** § <br>     Defendant(s) § | CASE NO: 14-35005 <br><br> CHAPTER 7 <br><br><br><br><br> ADVERSARY NO. 15-3095 |

## MEMORANDUM OPINION

On June 15, 2015, Gerardo Aguirre moved for summary judgment over chapter 7 Trustee Ronald Sommers' declaratory judgment action. On June 19, 2015, the Trustee responded with a cross-motion for summary judgment. A genuine issue of material fact existed as to the prejudicial effect, if any, of an omission contained in Aguirre's lien affidavit. Accordingly, on October 26, 2015, both motions were denied, subject to an evidentiary hearing to determine if any party was prejudiced by Aguirre's omission. No substantial prejudice was shown at the hearing. Therefore, Aguirre's motion for summary judgment will be granted.

### Background and Procedural Posture

On August 6, 2007, Gerardo Aguirre d/b/a Crestfield Homes entered into a Residential Construction Contract (the "Contract") with Patricia and Huber Santoyo to construct a home in Fort Bend County, Texas. (ECF No. 9-1). Under the terms of the Contract, the Santoyos were to purchase the house for $165,000.00 to be paid in one installment of $30,005.25 and one installment of $134,994.75. *Id.* Aguirre completed the home as planned on March 4, 2008.

(ECF No. 9 at 3).  After Aguirre demanded payment, the Santoyos informed him they could not complete the scheduled payments because they were unable to obtain financing for the home.  *Id.*  Aguirre remained in contact with the Santoyos for the next several months seeking payment, but these efforts proved unsuccessful.  *Id.*

On June 30, 2008, Aguirre filed a lawsuit against the Santoyos in the 268th Judicial District Court of Fort Bend County.  (ECF No. 9-3).  Aguirre alleged that, *inter alia*, he was entitled to judgment against the Santoyos for indebtedness owing under the Contract.  On May 7, 2008, Aguirre filed an Affidavit for Mechanic's, Contractor's, and Materialman's Lien in the official public records of Fort Bend County.  (ECF No. 9-4).  Aguirre did not attach a copy of the Contract to the May 7 Lien Affidavit.  On June 10, 2008, Aguirre filed a second Lien Affidavit with the Fort Bend County property records which did include a copy of the Contract. (ECF No. 9-5).  However, Aguirre omitted language required by § 53.254(f) of the Texas Property Code in both of the Lien Affidavits that he filed.  (Case No. 15-3095; ECF No. 15 at 10).

There is conflicting testimony as to when the Santoyos received a copy of the June Lien Affidavit.  Aguirre testified that a copy of the June Lien Affidavit was sent to the Santoyos before the June Lien Affidavit was filed.  (ECF No. 24 at 96)  Patricia Santoyo testified that the first time she or her husband received the June Lien Affidavit was when they were served with the lawsuit on June 30, 2008.  (ECF No. 24 at 25).  On July 9, 2008, the Santoyos hired Dermot Rigg, an attorney, to represent them in the lawsuit.  (Rigg Interrogatory #2).  Real estate has been part of Rigg's practice for nearly 40 years and Rigg has handled several dozen cases involving mechanic's and materialmen's liens.  (Rigg Interrogatory # 6, 7, and 8).

The state court lawsuit was still pending as of November 8, 2014, when the Santoyos filed a joint petition for chapter 7 relief.  (Case No. 14-35005; ECF No. 1).  Ronald J. Sommers

was appointed chapter 7 Trustee.  On December 4, 2014, the Court ordered that the Trustee could sell the Property in question free and clear of Aguirre's alleged lien, subject to resolution of the lien's validity.  (Case No. 14-35005; ECF No. 47).  The Court subsequently authorized the Trustee to sell the property for $315,000.00.  (Case No. 14-35005; ECF No. 76).  The bankruptcy estate received approximately $250,000.00 in net proceeds from the sale of the homestead.  (ECF No. 14 at 3).  The Santoyos have provided affidavits stating that the Fort Bend County property was their homestead at all times from August 2007 to September 8, 2014.  (ECF Nos. 11-7 and 11-8).

Aguirre has filed a proof of claim for $315,995.17, of which $300,000.00 is secured.  No objection has been filed as to the amount of the claim.  Accordingly, if this Court finds his lien to be valid, the entirety of the sale proceeds must be applied to his lien.

On March 26, 2015, the Trustee commenced this adversary proceeding seeking a declaratory judgment regarding the validity of Aguirre's mechanic's lien pursuant to 28 U.S.C. § 2201(a).  (ECF No. 1).  The complaint also objected to Aguirre's proof of claim pursuant to 11 U.S.C. § 541(b) and various claims under the Texas Deceptive Trade Practices Act.  *Id.*  On June 15, 2015, Aguirre filed a motion for summary judgment requesting a judgment that Aguirre held a valid mechanic's lien against the homestead.  (ECF No. 9)  On June 19, 2015, the Trustee responded with a cross-motion for summary judgment.  (ECF No. 11).  On October 26, 2015, this Court denied both motions, subject to an evidentiary hearing, because a genuine issue of material fact existed as to the prejudicial effect, if any, of Aguirre's omission in the June Lien Affidavit of the language required by § 53.254(f) of the Texas Property Code.  (Case No. 15-3095; ECF No. 15 at 1).

In its October 26, 2015, Memorandum Opinion, this Court found that if the Trustee could demonstrate that any party was prejudiced by Aguirre's omission in the June Lien Affidavit, it did not substantially comply with Chapter 53 of the Texas Property Code. If the June Lien Affidavit did not comply with the Property Code, the Trustee could set Aguirre's lien aside pursuant to 11 U.S.C. § 544(a) and his motion for summary judgment would be granted. (Case No. 15-3095; ECF 15 at 13). Conversely, if the Trustee could not demonstrate prejudice, then the Lien Affidavit did comply with the Property Code. Therefore, Aguirre's lien could be enforced against a hypothetical bona fide purchaser and Aguirre's motion for summary judgment would be granted. Finally, the Court held that if the Trustee's motion for summary judgment was granted, Aguirre would have only an unsecured claim, but if Aguirre's motion for summary judgment was granted, Aguirre will take the entire $250,000.00 in net proceeds from the sale of the homestead, as well as an unsecured claim for the deficiency. (Case No. 15-3095; ECF 15 at 5). On December 10, 2015, the Court held an evidentiary hearing regarding the prejudicial effect of Aguirre's omission in the June Lien Affidavit.

## Jurisdiction and Authority

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), and (K). The Court possesses constitutional authority to enter final judgment in this proceeding. "[A] trustee's exercise of its avoidance power under § 544(a) [has] been found to be an action to preserve property of the bankruptcy estate and thus the bankruptcy court [has] the constitutional authority to enter final judgments and orders in adversary proceedings invoking that provision of the Bankruptcy Code." *In re Visser*, 2013 WL 1337327, at *4 (Bankr. D. Idaho Apr. 1, 2013).

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.*

at 324.  The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

*A Violation of Section 53.055(a) of the Texas Property Code Cannot be Used by the Trustee to Remove Aguirre's Lien under §544(a)*

Since this Court's earlier Memorandum Opinion, an additional issue has come to the Court's attention.  The Trustee alleges that Aguirre failed to comply with Section 53.055(a) of the Texas Property Code.  Section 53.055(a) provides as follows:

> A person who files an affidavit must send a copy of the affidavit by registered or certified mail to the owner or reputed owner at the owner's last known business or residence address not later than the fifth day after the date the affidavit is filed with the county clerk.

Tex. Prop. Code Ann. § 53.055.  The Trustee's position is that Aguirre's alleged violation of § 53.055(a) invalidates Aguirre's lien and allows the Trustee to remove it pursuant to §544(a).  Ms. Santoyo has testified that she did not receive the Lien Affidavit until she was served with the lawsuit on June 30, 2008, twenty days after the Lien Affidavit was filed.  (ECF No. 24 at 25).  Aguirre testified that a copy of the June Lien Affidavit was sent to the Santoyos before the June Lien Affidavit was filed.  (ECF No. 24 at 96). Therefore, there is a factual dispute as to whether Aguirre violated §53.055(a).

However, in *Wesco Distribution, Inc. v. Westport Grp., Inc.*, the Texas Court of Appeals, addressed the notice requirement in regards to a materialman's lien statute:

> The notice requirement, unlike the technical defects excused by substantial compliance, plays a critical role in achieving the purposes of this statute. The materialman's lien statute is designed to protect contractors, subcontractors, and owners. *Cabintree, Inc. v. Schneider,* 728 S.W.2d 395, 396 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd). The purposes of notice are: (1) to give those parties entitled to notice an opportunity to protect their interests, and (2) to prevent

surprise. *Philbrook v. Berry,* 679 S.W.2d 651, 653 (Tex.App.-Houston [1st Dist.] 1984, orig. proceeding). There are many examples of courts applying the notice provision *to protect the interests of the parties entitled to notice*. In disputes between the materialman and the property owner, the owner is the party entitled to notice, and Texas courts apply the statute's protections to the owner.

*Wesco Distribution, Inc. v. Westport Grp., Inc.*, 150 S.W.3d 553, 559 (Tex. App. 2004) (emphasis added). The *Wesco* court made it clear that the protections from materialman's lien statute's notice requirement are only applied to the owner, contractors, and subcontractors. The Trustee has stepped into the shoes of a hypothetical bona fide purchaser, not that of the owner, contractor, or subcontractor. Accordingly, the Trustee cannot claim the protections provided by a § 53.055(a) notice. (Case No. 15-3095; ECF 15 at 6). Therefore, even if Aguirre did not provide timely notice to the Santoyos, the Trustee cannot use the violation of § 53.055(a) to invalidate Aguirre's lien. Because the Trustee is not a party entitled to notice, it is not necessary to decide whether Aguirre actually violated §53.055(a).

*No Party was Prejudiced by Aguirre's Failure to Comply with § 53.254(f) of the Texas Property Code*

      Section 53.254(f) of the Texas Property Code requires "[a]n affidavit for lien filed under this subchapter that relates to a homestead must contain the following notice conspicuously printed, stamped, or typed in a size equal to at least 10-point boldface or the computer equivalent, at the top of the page: NOTICE: THIS IS NOT A LIEN. THIS IS ONLY AN AFFIDAVIT CLAIMING A LIEN." Tex. Prop. Code Ann. § 53.254. It is unquestionable that Aguirre's June Lien Affidavit omitted the disclaimer required by § 53.254(f). (Case No. 15-3095; ECF 15 at 10).

      The Trustee points to four ways in which the omission of the disclaimer impacted Ms. Santoyo's decision-making in a way that prejudiced the Santoyos. First, Ms. Santoyo testified that if she had seen the disclaimer she would have retained counsel with experience in real estate

law. (ECF No. 24 at 63). However, on July 9, 2008, Ms. Santoyo retained Dermot Rigg. (Rigg's Interrogatory #2). Dermot Rigg has 40 years of experience in real estate law and has handled dozens of mechanic's and materialman's liens. (Rigg's Interrogatory # 6, 7, and 8). Ms. Santoyo did exactly what she testified she would have done had she seen the proper disclaimer.

Second, Ms. Santoyo testified that had the disclaimer been present, she would have viewed the lawsuit as involving issues other than a monetary dispute and instructed her attorney to explore her rights in connection with the removal of Aguirre's lien and the validity of Aguirre's lien affidavits. (ECF No. 24 at 42 and 79). While Ms. Santoyo did testify that she did not ask her attorney with help relating to a lien or a claimed lien due to the lack of disclaimers, this is contradicted by her testimony regarding her meeting with Mr. Aguirre prior to her retaining counsel. She testified that Mr. Aguirre told her that she could not sell her house because he had a lien over the property. (ECF No. 25 at 25). She then testified that this conversation prompted her to hire an attorney. It is not credible that she would have hired an attorney *because* Mr. Aguirre claimed a lien over her property and then failed to mention this lien to her attorney. Furthermore, even if she somehow neglected to mention the lien to Mr. Riggs, as an attorney with over 40 years of experience, Mr. Riggs should have investigated legal remedies pursuant to lien affidavits over property. At that time, there were two potential flaws in Mr. Aguirre's lien affidavit: the lack of disclosures required by § 53.254(f) and the dispute over certified mail notice required by § 53.055(a). For unknown reasons, Ms. Santoyo and her attorney did not challenge the lien affidavit, but it cannot be said this was due to the missing disclosures --- Ms. Santoyo did *exactly* what she said she would do had she seen the disclosure: hire an attorney with real estate experience. Any defects in Ms. Santoyo's legal representation cannot be imputed to Mr. Aguirre's flawed lien affidavit.

Third, Ms. Santoyo testified that if the disclaimer was present on the June Lien Affidavit, she would have removed the lien, then sold the house and paid Aguirre with the proceeds. Ms. Santoyo could have sold the house even if her mistaken belief about the Lien Affidavit were true. Ms. Santoyo always had the option to sell her home and pay off the lien. Therefore, Ms. Santoyo's decision to not sell her home did not stem from Aguirre's omission, but from her mistaken belief that a lien would prevent her from selling the house.

Finally, the Trustee alleges that if the disclaimer was present, Ms. Santoyo would have discovered that Aguirre had no right to lock her out of the home for six years. Ms. Santoyo testified that because the disclaimer was not present, she thought it was a lien and that she could not enter the house. (ECF No. 24 at 76). However, Ms. Santoyo also testified that she thought she could not go into the house because she had not paid Aguirre. (ECF. No. 24 at 66). Additionally, even if Ms. Santoyo's mistaken belief about the Lien Affidavit being a lien was correct, she still would have had the right to enter the house. Again, Ms. Santoyo's understanding was based on her incorrect knowledge, not on Aguirre's omission.

Ms. Santoyo either did exactly what she claimed she would have done if the disclaimer was present, or she relied on her own mistaken understanding and refrained from doing things that a lien would not have prevented her from doing. Aguirre's omission was not the cause of Ms. Santoyo's decision-making. Thus, the Santoyos were not prejudiced by Aguirre's failure to comply with Section 53.254(f) of the Texas Property Code. The Trustee has not alleged that any other party was prejudiced by Aguirre's omission. Therefore, Aguirre possessed a valid lien over the homestead, and he will take the entire $250,000.00 in net proceeds, as well as an unsecured claim for the deficiency.

**Conclusion**

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **June 23, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE
